Price, J.
Tbe case in the lower court was brought, by the plaintiffs in error to contest tbe will of Jacob Varner, deceased, who was the father of the parties to tbe action.
The will was executed on the 3rd day of July, 1889, and the grounds of contest set out in the petition and made the issue at the trial are two, viz: — First. That tbe testator was *387 not of sound mind and disposing memory when he execut» ed the will.
Second. That it was the result of undue influence exercised over the testator by Asa Varner and his wife.
The jury sustained the will,and error is prosecuted to reverse the judgment rendered on the verdict. The charge of the court must have been satisfactory, as no exception Was taken to any part of it, and while the plaintiff submitted certain charges which were requested to be given to the jury, we find no error in their refusal, and they are not of sufficient importance to warrant their discussion now.
Objections were made by plaintiff to very many questions propounded to witnesses for defendants, which the court permitted to be answered,and its rulings upon the same are assigned for error. But, after a careful consideration of the questions thus raised, we see no error in the record except upon two branches or classes of testimony introduced by the defendants in support of the will. As to all other points raised, we uo not regard them of interest to the profession at large, and will give them no room here.
But the two subjects referred to, seriously involve the rights of the parties and deserve more than a passing notice.
(1.) The plaintiffs introduced aformer will executed by Jacob Varner,in which he made a disposition of his property very different from that contained in the will now in controversy, and Asa, defendant, was the beneficiary by the change of the testator’s mind. By the former will he would have received but a very moderate portion of the father’s estate. By the provisions of the present will, if it stands, he will receive the bulk of the estate.
The former will was competent evidence to show not only a radical change of mind within a brief period, but also, that as the testator resided with Asa, it might tend strongly to support the charge of undue influence over the testator, exercised by his son.
*388 The defendants, in meeting the effect of this evidence produced a witness John Beard, who had written a will for the wife of Jacob Varner, the mother of the parties to this action, which will was executed prior to the date of the first will of the father, and in which the mother recognized Asa, in a liberal legacy,in fact giving him most of her property. This will had been destroyed, and Beard, was allowed to testify to its contents. To this plaintiffs excepted. The defendants also introduced the second will of the mother, executed in the year 1888, prior to the will now involved, wherein she cut Asa off with but one dollar.'
The record contains evidence tending to prove that the provisions of the latter will of his wife had come to the knowledge of Jacob, the father, at the time he executed the will now in contest. Another fact appearing in the record is, that not the best of feeling existed between the father and mother of these children when the several wills were made.
In the light of these facts, we think it was competent for the defendants to show the disposition the mother made of her property, especially as to Asa, in her will of 1888, because it would tend to account for the provision as to Asa in the will of the father executed in 1889, wherein he was devised the larger part of the estate. A motive could be thus found for the difference between his former and latter wills, and to reason, that, because the mother had cut Asa off, and, that it was his duty to so change his will as to protect him, reflects on the testamentary capacity of the father in the provisions of his last will and testament.
So far we find no fault with the admission of evidence.-
But defendants were not content with the latitude allowed them, and under the name of “further cross-examination,'’ William J. Varner and other plaintiffs were called to the stand by defendants, and asked the value and extent of the mother’s property in 188? and 1888. This examination *389 should not have been permitted. If Jacob, knowing the nature of his wife’s will, changed his in 1889, he did it, we assume, knowing what property she owned and how she disposed of it, and the reasons or motive which operated on his mind then, was the object to be shown, and not a value placed upon it by witnesses on the trial many years thereafter.
But if we let this pass, we find another advance through the door thus opened.
Under the guise of “further cross-examination,” the plaintiffs were further inquired if regarding a family meeting held at the residence of Isaiah Varner in the year 1891, when the mother made a division of her property among the children other than Asa. This was a transaction about two years after Jacob had executed the will in question.
The following questions were answered over objection:
“What amount did she divide up among the children?”
Answer: “ I think each one got somewhere in the neighborhood of $300 at that time.” Ques. “And which ones did she leave this to?” Answer: “Well, all that were there.” Ques. “Well, Asa was not there?” Answer. “No, Asa was not there. ” Ques. “And he didn’t get anything you know of ?” Answer. “Not at that time. ”
Each of the plaintiffs was asked how much he or she received at this distribution.
In the first place, it is not easy to see why the right to ask these questions was labeled “further cross-examination”.
The plaintiffs had not entered upon such inquiries, and they had no right to do so,and the evidence was clearly incompetent whether given as defensive,or under the name of “further cross-examination.” It is not enough to say that the purpose was to prove that the distribution was made according to the will of the mother executed in 1888. If that be so, how could that throw light on the mental capacity or motives of Jacob, when he signed his will in 1889?
If this distribution was known to Jacob, in 1891, when *390 it was made by his wife, all that can be said of it is, that he saw no reason to alter his will, and the argument amounts to the claim that because he did not change his will, he therefore was of sound mind when he made it two years previous.
From every point of view we consider the evidence incompetent and its admission substantial error. If it was legitimate to show what the plaintiffs received from their mother two years after the date of the father’s will, it would also be legitimate to prove that plaintiffs received gifts from others, or by economy and thrift, had acquired wealth and did not need the bounty of tbeir father.
Akin to this class of testimony was an inquiry made of Asa, when on the stand as a witness to sustain the will. Ques. “What, if any money or other valuable thing ef any kind did your mother give you?’’ Answer: “She'never gave me anything.”
This and the other was not merely innocent or harmless testimony, but calculated to count and weigh with the jury, and lead them to ignore the question at issue, and conclude, that after all, Asa had fared badly with his mother, and the father’s will;was about right whether he was competent to make it or not.
(2.) The defendants, to further sustain the will,introduced a photograph of the testator,, taken at Gflandorf in the summer of 1891, about two years after the execution of the will. The evidence about this, outside the picture itself, is very meager, as given by Asa on pages 472 and 473 of the record. It was taken by an itinerant artist, or, as Asa puts it, “it wag taken in a gallery that traveled on wheels from one town to another.” He produced the photograph,and as1 an. exhibit, it was afterwards put in evidence, over the objection of the plaintiffs. ' There is no evidence from any source as to the accuracy of the picture,or to what degree it resembled the old gentleman either at the'time it was taken, or at the date of the will.
*391 We have been told by counsel for defendants, that we should take judicial notice of the progress and development of photography, and that in the present advanced stage of that art, correct likenesses are produced. It is true that courts will take judicial notice of the advance in this art, but it may be as well known judicially, that the best of artists do not go about from village to village in movable galleries; and it might be added, as common knowledge, that the accuracy of the likeness depends on the skill of the artist, purity of chemicals and other materials used — condition of the light and shade, and many other attendant circumstances.
Hence, we say, that if the issue in this case is one in which photographic evidence is competent, the preliminary proof should be made, that the picture fairly represents the person and features it purports to represent. It is settled beyond dispute, that in proper cases, maps of places, photographs of places — scenes, lands,machinery, of persons as to identity may be introduced to aid the jury in applying the other evidence, just as an actual view of premises or machinery may be allowed to enable the jury to understand evidence to be given on the subject in controversy. But their introduction must be preceded by some proof of the correctness of the map or the photograph, for there is no legal presumption that they are correct.
Counsel for defendants cite some cases against this position, but they are outweighed by a large number of well considered adjudications in different states.
In support of our view, we are content to cite a few authorities which discuss this class of testimony.
Rice on Evidence, Sections 455, 457, 459; Conley v. People, 83 N. Y. 464; People v. Buddensick, 103 N. Y. P. 509. Blair v. Peldham, 118 Mass., 420; Com. v. Coe, 115 Mass., 481, 8 Am. St. Reps., 894-5; 35 L. R. A. 803, and cases there cited.
*392 But on the issue of testamentary capacity,as in.this case, is a.photograph of the testator admissible, even if shown to be a perfect likeness? The claim that it is, seems to us an anomaly. A photograph is a picture of some material, substantial thing — place—'Scene—some physical object; but we know of no claim of science or the art of photography that a picture or likeness can be taken of the intangible, immaterial mind. The most devout believer in the efficacy of the X rays has never urged them as a means of discovering the mind or any of attributes.
This photograph was passed to the jury for inspection,and they were asked for the time being, to become psychologists and mind readers — to determine from the looks and features portrayed, the degree of mental capacity and the power of the disposing memory of the subject of the picture; a class of evidence impossible of cross-examination,and making impressions on jurors beyond the touch or reach of argument.
There is no case we can find which approves of the use of a photograph as made in this case, and there is no sound reason to sustain it.
But it is urged, that if it was error to admit the photograph, and error to admit the distribution made by the mother above noted, they were immaterial errors, for which the judgment should not be reversed. We would gladly accept that view if it is sound But it is not sound. The errors were gross. The evidence was grossly incompetent,and admitted after arguments of counsel as to its competency, and the court sanctioned its admission, which of itself, would impress the jury of its importance in the case. And our experience enables is to conceive what use could be made of such evidence by learned and eloquent counsel.
It does not devolve on plaintiffs in error to show that such errors influenced the jury and were therefore prejudicial. It will be presumed that error is prejudicial unless the whole record shows to the contrary.
Handy & Ogan, for Plaintiffs íd Error.
Watts & Moore, and Bailey & Bailey for Defendants in Error.
In the case of Peter P.Lowe v. Geo.Lehman 15,Ohio St. 179,our Supreme Court lays down this rule:
“Where the record shows that the court below misdirected the jury, or admitted illegal testimony as to a point “material to the issue, it is not necessary, in order to re- “ verse the judgment, to show that the jury were in fact in“fluenced thereby. Such influence will be presumed.”
See also case of Globe Insurance Co. v. Thomas Sherlock et al., 25 Ohio St., 50.
On the competent evidence in the record, the case was a close one, and the jury might be justified in finding for or against the will. Hence, the necessity of guarding against the effect of improper testimony. On account of previous trials and the great expense of another, we regret very much to reverse the judgment. Nevertheless it must be done.
For the errors pointed out the judgment is reversed and cause remanded for a new trial.